**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jose (Joseph) TAMARGO and Larry
Carrillo, Defendants-Appellants.**

No. 80–5791.

United States Court of Appeals,
Eleventh Circuit.

April 9, 1982.

Rehearing Denied May 12, 1982.

888

Philip Carlton, Jr., Thomas A. Wills, Miami, Fla., for Jose Tamargo.

Raul Carreras, Jr., Carlos & Abbott, Miami, Fla., for Larry Carrillo.

Ana Marie Carnesoltas, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before FAY, ANDERSON and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The appellants, Jose Tamargo and Larry Carrillo, were charged jointly in a three-count indictment with (1) conspiracy to possess with intent to distribute methaqualone, a Schedule II nonnarcotic controlled substance, in violation of 21 U.S.C. § 846, (2) possession with intent to distribute methaqualone in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and (3) distribution of methaqualone in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Both appellants were convicted by a jury on all three counts, and this appeal followed. The appellants claim that the trial court erred by denying their motions for judgment of acquittal on all three counts because the evidence was insufficient to support their convictions. We affirm.

"When reviewing the sufficiency of the evidence supporting a criminal conviction, the standard of review is whether, viewing the evidence and all reasonable inferences derived therefrom in the light most favorable to the government, the jury could conclude that the evidence is inconsistent with every reasonable hypothesis of the defendant's innocence. . . . This standard of review applies to any criminal conviction, including one for conspiracy." *United States v. Spradlen*, 662 F.2d 724, 727 (11th Cir. 1981) (citations omitted).

The facts, viewing the evidence in the light most favorable to the government, are as follows. Gordon Rayner, an agent of the Drug Enforcement Administration (DEA), had a meeting with Harold Sheys in Brunswick, Georgia, on March 13, 1980, at which time Agent Rayner was using the undercover name Joe Garner. At this meeting, Rayner and Sheys negotiated for the sale of a large quantity of methaqualone tablets. Sheys told Rayner that he could obtain methaqualone tablets from a source in the Miami, Florida, area who desired to deal in quantities of 100,000 or more.

Agent Rayner and Sheys met again on March 18, 1980, in a room at a Holiday Inn in Miami to conduct further negotiations for the delivery of methaqualone tablets. Sheys told Rayner during this meeting that his supplier's name was "Joe."

On March 31, 1980, Agent Rayner telephoned Sheys, who was in room 118 at the Airline Hotel in Miami. Sheys told Rayner that he had the methaqualone tablets with him and that the deal was all set. In a subsequent telephone conversation on the same day, Sheys told Rayner that his methaqualone supplier was with him at room

118. During this conversation, Agent Rayner, who has a Spanish language background and who had served in Miami and Latin America for four years, heard another voice in Sheys' room—that of a male individual with a "Latin accent."

At about 5:45 p.m. on March 31, 1980, Agent Rayner met Sheys in room 118. Sheys told Rayner that his supplier, "Joe," had gone to pick up 50,000 methaqualone tablets. Rayner and Sheys discussed the price of the methaqualone, and Rayner eventually agreed to pay $1.25 per tablet. Rayner then left to make arrangements concerning the money. At about 9:30 p.m., Rayner telephoned Sheys and was told to return to room 118 because the deal was ready to be made.

Agent Rayner arrived back at the motel at about 10:05 p.m. He entered the motel from the south side and was proceeding toward room 118 when he observed two men coming through the north entrance. Rayner and the two men arrived at room 118 simultaneously. One of the men was appellant Carrillo, who was carrying some kind of lump or package covered by a shirt. Carrillo's companion was named Jesus Sanchez. When Sheys answered the door, he told Rayner with reference to the two men, "That is all right. They are here with the stuff." Rayner and the two men entered room 118, which already was occupied by another man in addition to Sheys. Sheys introduced this man to Rayner as "Joe." Rayner identified "Joe" as appellant Jose Tamargo.

Rayner observed a clear plastic bag containing numerous white tablets sitting on a dresser in room 118. Carrillo placed another clear plastic bag, which was the package that Rayner had observed him carrying, on the dresser next to the first plastic bag. Tamargo, Carrillo, Sheys, Sanchez, and Rayner all then discussed the delivery of the methaqualone tablets and the quantity available.

Appellant Tamargo told Rayner that 36,-000 methaqualone tablets were available, 32,000 of which were in a car in the motel parking lot. Appellant Carrillo stated that he had 12,000 more methaqualone tablets. An agreement was reached by which Rayner would pay $1.25 per tablet for 36,000 tablets, bringing the total purchase price to $45,000.

Rayner then left room 118, ostensibly to get the money. He returned shortly with Agent Segarra, and they arrested Sheys, Tamargo, and Carrillo (Sanchez already had departed). In addition, the two clear plastic bags on the dresser were seized. Subsequent examination revealed that each bag contained 2,000 methaqualone tablets.

Rayner left the room, went out to the motel parking lot, and told the other agents what had happened. Sanchez, Garcia (another co-defendant not tried with the appellants), and an agent were standing by the car in which Carrillo had arrived with the plastic bag full of methaqualone tablets. A search of the car revealed several similar plastic bags containing methaqualone tablets.

■ Appellants first contend that the evidence is insufficient to support their convictions for conspiracy to possess with intent to distribute methaqualone. The essential element of a drug conspiracy under 21 U.S.C. § 846 is an agreement by two or more persons to violate the narcotics laws. *United States v. Spradlen*, 662 F.2d 724, 727 (11th Cir. 1981). The existence of such an agreement may be proved by circumstantial evidence, such as "inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme." *Id.* Proof is not required that the defendant had knowledge of all the details of the conspiracy; the defendant need only have knowledge of the essential objective of the conspiracy. *United States v. Alvarez*, 625 F.2d 1196, 1198 (5th Cir. 1980) (en banc), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981). The defendant may be found guilty of conspiracy even if he did not join the conspiracy until after its inception, *United States v. Robertson*, 659 F.2d 652, 656 (5th Cir. 1981), and even if he plays only a minor role in the total scheme, *United States v. Alvarez*, 625 F.2d at 1198.

■ The evidence in this case establishes beyond a reasonable doubt that a conspir-

acy existed to possess methaqualone with intent to distribute. Furthermore, the jury reasonably could have concluded that both appellants knew of the conspiracy and voluntarily participated in it. First, the appellants were present in room 118 when the final negotiations for the sale of the methaqualone tablets occurred. Although mere presence is not enough to establish participation in a conspiracy, *United States v. Spradlen,* 662 F.2d at 727, the evidence shows much more. Appellant Carrillo arrived at room 118 with a plastic bag of methaqualone tablets in his possession. Both of the appellants took part in discussions concerning the delivery of the methaqualone tablets and the quantity available. Appellant Tamargo told Agent Rayner that 36,000 methaqualone tablets were available, 32,000 of which were in a car in the motel parking lot. Appellant Carrillo told Agent Rayner that he had 12,000 more methaqualone tablets. A search of the car in which Carrillo had arrived at the motel revealed several plastic bags containing numerous methaqualone tablets. We hold that this evidence was sufficient for the jury to conclude that the appellants were knowing, voluntary participants in a conspiracy to possess methaqualone with the intent to distribute.

■ Appellants' second contention is that the evidence was insufficient to support their convictions for possession with intent to distribute methaqualone. Dealing first with appellant Carrillo, the evidence shows that he arrived at room 118 with a clear plastic bag containing 2,000 methaqualone tablets in his possession. Carrillo thus indisputably was in possession of methaqualone, leaving only the question whether the evidence was sufficient to support the conclusion that he intended to distribute it. Intent to distribute a controlled substance may be inferred from the quantity involved. *United States v. Grayson,* 625 F.2d 66 (5th Cir. 1980). The jury reasonably could have inferred that one in possession of 2,000 methaqualone tablets intended to distribute the tablets rather than use them for personal consumption. Thus, the evidence was sufficient to support Carrillo's conviction for possession with intent to distribute methaqualone.

■ As for appellant Tamargo, the evidence is also sufficient to support his conviction for possession with intent to distribute methaqualone. Possession of a controlled substance may be actual or constructive. *United States v. Moreno,* 649 F.2d 309 (5th Cir. 1981). Moreover, as with actual possession, constructive possession of a controlled substance may be exclusive or joint and may be proved by circumstantial as well as direct evidence. *Id.* Appellant Tamargo was a participant in a conspiracy to possess methaqualone with intent to distribute, and the evidence shows beyond any doubt that some participants in this conspiracy possessed methaqualone with the intent to distribute. Therefore, Tamargo, as a co-conspirator, is considered also to have possessed methaqualone with the intent to distribute. *United States v. Garcia,* 655 F.2d 59, 63 (5th Cir. 1981).

■ Appellants' final contention is that the evidence was insufficient to support their convictions for distribution of methaqualone. "The term 'distribute' means to deliver ... a controlled substance." 21 U.S.C. § 802(11). "The terms 'deliver' or 'delivery' mean the actual, constructive, or *attempted* transfer of a controlled substance...." 21 U.S.C. § 802(8) (emphasis added). The statutory scheme clearly defines "distribution" as a delivery, and "delivery" can be merely an attempted transfer.

■ Although no actual transfer of methaqualone occurred in this case, the evidence beyond a reasonable doubt supports the conclusion that appellants attempted to transfer methaqualone, and this is all that the statute requires for conviction. The argument that no distribution occurs where an attempted transfer is thwarted by the defendants' arrest was squarely rejected in *United States v. Oropeza,* 564 F.2d 316, 322 (9th Cir. 1977), *cert. denied,* 434 U.S. 1080,

98 S.Ct. 1276, 55 L.Ed.2d 788 (1978), and we reject it here as well. We hold that the evidence was sufficient to support appellants' convictions for distribution of methaqualone.

For the reasons expressed in this opinion, the appellants' convictions on all three counts are

AFFIRMED.