**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William F. BARNES and John Allen Riddle, Defendants-Appellants.**

No. 80–5894.

United States Court of Appeals,
Eleventh Circuit.

July 29, 1982.

Robert T. Hedrick, Raleigh, N. C., for Barnes.

Archibald J. Thomas, III, Asst. Federal Public Defender, Jacksonville, Fla., for Riddle.

Bernard S. McLendon, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before VANCE, KRAVITCH and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The appellants, William F. Barnes and John Allen Riddle, were charged in a three-count indictment with various drug-related offenses. Count I charged appellants and six other defendants with conspiracy to import cocaine into the United States in violation of 21 U.S.C. §§ 952(a), 960, and 963. Count II charged appellants and five other defendants with conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count III charged appellant Riddle with using a telephone to facilitate the commission of the conspiracy charged in Counts I and II in violation of 21 U.S.C. § 843(b). Following a jury trial, appellants were convicted on all counts. This appeal followed. We affirm.

FACTS

In August 1979, Ivan Cifuentes, a confidential informant for the Drug Enforcement Administration (DEA), traveled to Bogota, Colombia, for a meeting with Fabio Moreno. While in Bogota, Cifuentes was told by Moreno that Moreno could move narcotics through Braniff Airlines flight attendants. Moreno explained that the flight attendants could bring up to 250–300 grams of cocaine into the United States, but that a private plane would be necessary to import an amount exceeding 300 grams.

Moreno introduced Cifuentes to two of the flight attendants, Diego Valencia and Lillian Ortiz, and described his plan for importing cocaine into the United States using Valencia and Ortiz as couriers. After Cifuentes had returned to the United States, he received a telephone call from Moreno, who informed Cifuentes that Ortiz would be arriving in the United States soon to deliver a quantity of cocaine.

In September 1979, appellant Riddle and Marc Doggett visited Cifuentes' home in Jacksonville, Florida. Riddle explained to Cifuentes how Riddle could import cocaine into the United States by placing it inside his wooden leg.

On November 15, 1979, DEA Agent Douglas Driver met with Cifuentes, who informed Agent Driver about Moreno's plans to import cocaine. About two days later, Agent Driver instructed Cifuentes to contact Moreno to arrange for a sample of cocaine to be sent to Cifuentes. Agent Driver planned to penetrate Moreno's organization by posing as a potential customer so that he would be trusted. Agent Driver represented that he was a smuggler of large quantities and that he was interested in small quantities only as a sample. His plan was to obtain a sample of cocaine of approximately 100 grams, to flash money for a large quantity, and then to arrest the sellers when they delivered the cocaine.

Moreno telephoned Cifuentes from Columbia on November 20, 1979, and expressed his dissatisfaction with Cifuentes about not following through on his plans and Cifuentes' failure to call Moreno. Moreno informed Cifuentes that Moreno could send Cifuentes 100 grams of cocaine on that Friday and requested Cifuentes to call him. Moreno asked Cifuentes if he was living at the same place and asked Cifuentes to call him from his home. Moreno promised to pay for the call. Moreno advised Cifuentes that he would be away for awhile and that his wife, Maria Moreno, who knew her "fish," would be in charge of everything.

Agent Driver had instructed Cifuentes to refer to cocaine as "fish" when conversing with Moreno, and to use "large fish" for kilogram quantities and "small fish" or "little ones" for ounces or grams of cocaine.

Moreno, Agent Driver, Cifuentes, and Luis Edwardo Ortiz-Christoncho met in Nassau, Bahamas, on November 26, 1979, to negotiate for the proposed sale of 50 kilograms of cocaine. Plans were formulated for Moreno and Luis Ortiz to send a sample of cocaine to Cifuentes through Braniff Airline stewardess Lillian Ortiz. Agent Driver would receive a portion of the sample, and if Driver liked the sample he would travel by private plane to Bogota to obtain the 50 kilograms.

On December 23, 1979, a telephone conversation took place between Cifuentes and Maria Moreno, who advised Cifuentes that appellant Riddle had been in Bogota and would be calling Cifuentes. Maria Moreno further stated that Lillian Ortiz would be leaving the next day and that Maria had given Lillian two "gifts," that Riddle would be waiting, and that Cifuentes should give one "gift" to Riddle. Maria Moreno also told Cifuentes that Riddle owed Fabio Moreno $3,000 and that Riddle was not to receive anything unless Riddle gave Cifuentes the $3,000.

Appellant Barnes met Agent Driver and Cifuentes on December 24, 1979, at the Dupont Plaza Hotel in Miami. Barnes told Agent Driver and Cifuentes that he had been waiting in Miami for three days for Lillian Ortiz, who was bringing cocaine from Bogota. Barnes stated further that Riddle went to Bogota and had arranged with Fabio Moreno to send approximately 200 grams of cocaine to Barnes and Riddle by way of Lillian Ortiz. Barnes told Agent Driver and Cifuentes that he made a "press" whereby Lillian Ortiz could make the cocaine smaller and easier to conceal. Barnes also told Agent Driver and Cifuentes that he did not have the $3,000 that Cifuentes was to collect for Fabio Moreno because he had to pay $65.00 per day for his room at the Dupont Plaza. Barnes then gave Agent Driver $1,000 for the cocaine to be delivered by Lillian Ortiz.

Also on December 24, 1979, a telephone conversation took place between Riddle and Cifuentes in which Cifuentes advised Riddle that Moreno had told Cifuentes to give Riddle "100" but that Riddle was to give Cifuentes $3,000 first. Later that same day, Lillian Ortiz arrived from Bogota at the Miami International Airport. Customs officials performed a pat-down search, discovered a package of cocaine taped to her leg, and arrested her.

Riddle telephoned Cifuentes at his home on December 30, 1979, inquiring as to what had happened to Lillian Ortiz. Riddle stated that he needed the cocaine and that reimbursement of his money would not help.

## VARIANCE

■ Appellants' first contention is that they suffered substantial prejudice due to a variance between the allegations of the indictment and the proof. Count I of the indictment alleges that appellants, along with six others, conspired to import cocaine into the United States. Count II of the indictment alleges that appellants, along with five others, conspired to possess with intent to distribute cocaine. Appellants argue that Counts I and II allege a single conspiracy, but that the proof at trial established the existence of two separate conspiracies: one involving a 200-gram transaction and the other involving a 50-kilogram transaction. Appellants urge that this constitutes a variance between the indictment and the proof, and that they were prejudiced by this variance for several reasons: (1) hearsay evidence was introduced that related only to the 50-kilogram transaction, in which appellants were not involved; (2) the jury was unable to understand the connection of incriminating evidence to the particular defendants; (3) the variance unfairly surprised the appellants; and (4) appellant Riddle was prejudiced in sentencing because his presentence investigative report suggested that he was convicted of a conspiracy involving 50 kilograms of cocaine, thus affecting Riddle's chances for parole.

In *United States v. L'Hoste*, 609 F.2d 796 (5th Cir.), *rehearing denied*, 615 F.2d 383, *cert. denied*, 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980), the court stated that "[i]f the Government proves multiple conspiracies and a defendant's involvement in at least one of them, then clearly there is no variance affecting that defendant's substantial rights." *Id.* at 801; *accord, United States v. Wayman*, 510 F.2d 1020, 1025 (5th Cir.), *cert. denied sub nom. Moore v. United States*, 423 U.S. 846, 96 S.Ct. 84, 46 L.Ed.2d 67 (1975). Even if we assume *arguendo* that the 200-gram transaction and the 50-kilogram transaction were parts of separate conspiracies, it is clear that the government proved the appellants' involvement in the 200-gram transaction and thus no prejudicial variance existed.

We note also that insofar as evidence being presented that related only to the 50-kilogram transaction, the trial court explicitly instructed the jury to disregard such

evidence in its consideration of the charges against the appellants.[1] Furthermore, with regard to Riddle's contention that his chances for parole have been adversely affected by the inclusion in his pre-sentence investigative report of references to the 50-kilogram transaction, the trial court stated on the record during Riddle's sentencing proceedings that such references do not relate to Riddle. The trial court further directed that this statement be transcribed and attached to the pre-sentence investigative report.[2] Thus, these two claims of prejudice are without merit.

## SEVERANCE

▮▮▮ Appellant Riddle contends that the trial court erred by refusing to grant his motion for severance. As a general rule, persons jointly indicted shall be tried together. *United States v. McCulley*, 673 F.2d 346, 349 (11th Cir. 1982); *United States v. Morrow*, 537 F.2d 120 (5th Cir. 1976), *cert. denied sub nom. Martin v. Unit-*

---

1. The court instructed the jury as follows:

   THE COURT: All right. Ladies and gentlemen of the jury, you've heard testimony from this witness about efforts to set up and complete a 50 kilograms of cocaine transaction, that there had been a seizure of approximately that amount of cocaine in Colombia, that there was one and a half to two million dollars involved in the cocaine transaction, and other references to that large or larger transaction.

   You will recall the testimony of Agent Driver that these defendants, these three defendants, were not involved in that transaction. The government agrees that these three defendants were not involved in that transaction.

   The government has not charged that any of these three defendants were a party to such transaction. No evidence linking any of these three defendants with that transaction has been introduced nor is any suggested or contemplated.

   The fact that others named in this indictment may have been involved in a 50 kilograms of cocaine deal has no relevance to these defendants whatsoever or in any manner. That testimony is extraneous evidence of a series of acts by others in which these three defendants were not involved and for which they have no liability or responsibility.

   I am therefore instructing you to disregard any and all testimony with regard to a 50-kilogram deal of cocaine as far as these defendants are concerned and that you are to permit that deal to play no part whatsoever in

   your consideration of the charges against these three defendants.

   Supp. Record, Vol. 5, at 296–97.

2. The following colloquy occurred between the trial court and Riddle's counsel (Mr. Skinner) during Riddle's sentencing proceedings:

   THE COURT: ... The court for the record in this case states that the references to the deal involving 50 kilograms of cocaine contained in the presentence investigation report do not relate to the defendant Allen Lee Riddle in this case. And the court found during the course of the trial that the defendant Allen Lee Riddle was not charged with and, hence, any reference to a deal involving 50 kilograms of cocaine was inappropriate in the consideration of the charges against him.

   MR. SKINNER: Your Honor, rather than putting further comments on the record which will be transcribed later and attached to the PSI, I would ask to be given an opportunity to reflect on it for some period of time and perhaps draft one or two pages that might later be attached to the PSI as our version. I did not realize we would be given that opportunity.

   THE COURT: You have not been given that opportunity to supplement the PSI other than by the statement of the court which will be transcribed and attached to the presentence investigation report.

   2nd Supp. Record, Transcript of Excerpts from Sentencing Proceedings, at 3–4.

ed States, 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977). The decision whether to grant a motion for severance is within the sound discretion of the trial court; failure to grant severance will be reversed only where the trial court abused its discretion. United States v. McCulley, 673 F.2d at 349; United States v. Nickerson, 669 F.2d 1016, 1022 (5th Cir. 1982); United States v. Salomon, 609 F.2d 1172 (5th Cir. 1980).

▇▇▇ Riddle argues that the trial court abused its discretion in refusing to grant severance because codefendant Valencia was presenting a defense inconsistent with that of Riddle. Valencia's defense was the absence of evidence to show his participation in any conspiracy, whereas Riddle's defense was based upon the existence of separate conspiracies. The test for determining whether severance is proper in such a situation is whether the defenses are "antagonistic to the extent that they approach being mutually exclusive." United States v. Wilson, 500 F.2d 715, 723 (5th Cir. 1974), cert. denied sub nom. White v. United States, 420 U.S. 977, 95 S.Ct. 1403, 43 L.Ed.2d 658 (1975). We do not believe that Riddle's and Valencia's respective defenses approach being mutually exclusive, and thus severance was not required. Moreover, the trial court did not otherwise abuse its discretion in refusing to grant severance. Therefore, we reject Riddle's contention that the trial court erred by denying the motion for severance.

## TERRITORIAL JURISDICTION AND VENUE

▇▇▇ Appellants urge that the trial court should have granted their motions for judgment of acquittal on Counts I and II because the government failed to establish territorial jurisdiction and venue. "[T]erritorial jurisdiction and venue are essential elements of any offense in the sense that the burden of proof is on the prosecution to prove their existence.... However, venue need only be proved by a preponderance of the evidence as opposed to beyond a reasonable doubt." United States v. Rivamonte, 666 F.2d 515, 517 (11th Cir. 1982). A con-

spiracy may be prosecuted in the district where it was formed or in any district in which an overt act was committed in furtherance of its object. United States v. DeLeon, 641 F.2d 330, 336 (5th Cir. 1981). Thus, to establish territorial jurisdiction and venue in this case, the government had to prove by a preponderance of the evidence that the conspiracy alleged in the indictment was formed, or that an overt act in furtherance thereof was committed, in the Middle District of Florida, which includes Jacksonville. In determining whether the prosecution met this burden, the evidence and all reasonable inferences derived therefrom must be viewed in the light most favorable to the government. United States v. Glasser, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). So viewed, the evidence shows that a meeting in furtherance of the conspiracy occurred in Jacksonville, Florida, in September 1979 between appellant Riddle, Cifuentes, and Marc Doggett. Therefore, we hold that the government met its burden and that territorial jurisdiction and venue were properly established.

## SUFFICIENCY OF THE EVIDENCE
### Conspiracy

The appellants contend that the evidence was insufficient to support their convictions on the conspiracy counts. In assessing the sufficiency of the evidence supporting a criminal conviction, the standard of review is "whether, viewing the evidence and all reasonable inferences derived therefrom in the light most favorable to the government, the jury could conclude that the evidence is inconsistent with every reasonable hypothesis of the defendant's innocence.... This standard of review applies to any criminal conviction, including one for conspiracy." United States v. Spradlen, 662 F.2d 724, 727 (11th Cir. 1981) (citations omitted); United States v. Tamargo, 672 F.2d 887, 888 (11th Cir. 1982).

▇▇▇ The essential element of a drug conspiracy is an agreement by two or more persons to violate the narcotics laws. United States v. Tamargo, 672 F.2d at 889;

*United States v. Spradlen,* 662 F.2d at 727. The existence of such an agreement may be proved by circumstantial evidence, such as "inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme." *Id.* The defendant need not have knowledge of all the details of the conspiracy; proof is required only that he knew of the essential objective of the conspiracy. *United States v. Tamargo,* 672 F.2d at 889. Moreover, the "defendant may be found guilty of conspiracy even if he did not join the conspiracy until after its inception . . . and even if he plays only a minor role in the total scheme. . . ." *Id.*

■ The evidence in this case, viewed in the light most favorable to the government, supports the appellants' conspiracy convictions. As for appellant Riddle, he concedes in his brief that "there was evidence presented to show . . . Riddle's participation in a conspiracy involving 200 grams of cocaine." Brief of Appellant Riddle at 23. Riddle's sufficiency challenge is based on the argument that the indictment alleged a single conspiracy involving both a 200-gram and a 50-kilogram transaction, and that the government failed to prove his participation in the 50-kilogram transaction. We have already determined, however, that the appellants were convicted only for their involvement in a conspiracy involving 200 grams of cocaine, and, as Riddle concedes, the evidence establishes beyond a reasonable doubt his involvement in that conspiracy. Thus, we hold that the evidence was sufficient to support Riddle's convictions for conspiracy to import cocaine and for possession with intent to distribute cocaine.

Turning to appellant Barnes, the evidence shows that he met with Agent Driver and Cifuentes on December 24, 1979, at the Dupont Plaza Hotel in Miami. During this meeting, Barnes told Driver and Cifuentes that Riddle had gone to Bogota to arrange for Fabio Moreno to send approximately 200 grams of cocaine to Barnes and Riddle by way of Lillian Ortiz. Barnes further stated that he had been waiting for three days in Miami for Lillian Ortiz to arrive from Bogota with the cocaine, and that he had made a "press" so that Lillian Ortiz could compress the cocaine, making it easier to conceal. In addition, Barnes gave Agent Driver $1,000 for the cocaine to be delivered by Lillian Ortiz, but stated that he did not have the $3,000 that Cifuentes was to collect for Fabio Moreno. This evidence is more than sufficient to support the jury's conclusion that Barnes was a knowing, voluntary participant in a conspiracy to import cocaine and to possess with intent to distribute cocaine.

*Use of Telephone to Facilitate Conspiracy*

■ Appellant Riddle contends that the evidence was insufficient to support his conviction on Count III for using a telephone to facilitate the commission of the conspiracy charged in Counts I and II. Riddle was convicted under 21 U.S.C. § 843(b), which provides in pertinent part:

> It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II of this chapter. . . . For purposes of this subsection, the term "communication facility" . . . includes . . . telephone. . . .

The elements of proof required for conviction under § 843(b) are (1) knowing or intentional (2) use of a "communication facility" (3) to facilitate the commission of a felony under 21 U.S.C. § 801–966. *United States v. Rey,* 641 F.2d 222, 224 n.6 (5th Cir. 1981). In this case, then, the government was required to prove that Riddle (1) knowingly or intentionally (2) used a telephone (3) to facilitate the conspiracy charged in Counts I and II.

Riddle's conviction was based on his telephone conversation of December 30, 1979, with Ivan Cifuentes, the informant.[3] Riddle telephoned Cifuentes at his home in

---

3. The government in its brief also relies upon a telephone conversation between Riddle and Cifuentes on December 24, 1979. The indictment, however, alleges only the call of December 30, 1979, and thus we consider only this call.

Jacksonville and inquired as to what had happened to Lillian Ortiz, the stewardess who had been arrested four days earlier at the Miami airport. Riddle stated to Cifuentes that he needed the cocaine and that reimbursement of his money was not acceptable.

Appellant concedes that he made this telephone call to Cifuentes, but argues that it was legally impossible for him to commit, cause, or facilitate the commission of the alleged conspiracy by talking on the telephone with a government employee, regardless of whom Riddle may have believed he was speaking to. This argument misses the mark. The question is not whether Riddle could have conspired with a government informant, but rather whether his call to Cifuentes was knowingly or intentionally made for the purpose of facilitating the conspiracy that he was involved in with persons other than Cifuentes. The evidence shows that the purpose of Riddle's call to Cifuentes was to attempt to obtain Riddle's share of the cocaine imported by Lillian Ortiz. The jury reasonably could conclude that Riddle knowingly or intentionally made the call to facilitate the conspiracy charged in Counts I and II.

■ Riddle also argues that the government failed to show proper venue with respect to the § 843(b) count. The indictment alleges that Riddle used the telephone in the Middle District of Florida, but the evidence showed that Riddle placed the call from North Carolina. The call was made to Cifuentes' home in Jacksonville, which is in the Middle District of Florida.

The Constitution provides that venue be laid in "the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. We have found no cases, nor have the parties cited any, on the issue whether a § 843(b) offense is committed in the district where the call was made or in the district where the call was received. Cases involving use of the mails are helpful by way of analogy, however. For example, in *United States v. McGregor*, 503 F.2d 1167 (8th Cir. 1974), *cert. denied*, 420 U.S. 926, 95 S.Ct. 1122, 43 L.Ed.2d 395 (1975), the court

held that prosecution of an offense involving use of the mails may be brought either in the district where the item was mailed or where it was delivered. Also, in *United States v. Walker*, 559 F.2d 365 (5th Cir. 1977), the court held that where obscene matter mailed in California was received in the Western District of Texas, venue was proper in that district. We hold that a § 843(b) offense is "committed" for venue purposes both in the district where the call was made and in the district where the call was received. Thus, venue was proper in this case because Riddle's call was received by Cifuentes within the Middle District of Florida.

Riddle argues that if venue is upheld in this case, then the government would be free to bring a prosecution in any district in the country simply by making a telephone call to the potential defendant from the district in which venue is desired. What this argument overlooks, however, is that the government's informant, Cifuentes, did not call Riddle—Riddle called Cifuentes.

## APPELLANTS' REMAINING CONTENTIONS

■ Appellant Riddle argues that the government acted in bad faith by eliciting testimony from Ivan Cifuentes (the informant) regarding an alleged death threat made by Riddle. The testimony at issue came out in response to a question put to Cifuentes by the prosecutor on direct examination as follows:

Q What did defendant Riddle say to you, Mr. Cifuentes, at your home when he arrived there with Marc Doggett?

A Mr. Riddle mentioned things like how he will be able to import cocaine through, you know, go through customs without being detected. He mentioned things about personal accidents that he had had before. *He mentioned things about somebody that he knows in North Carolina that was talking to people and how he would like to kill one of those persons.*

Supp. Record, Vol. 5, at 362 (emphasis supplied). Riddle contends that the govern-

ment knew that Cifuentes would allude to the death threat, that the government had an obligation to instruct Cifuentes not to do so, and that he was greatly prejudiced by this testimony. The government concedes that it knew Cifuentes might make the challenged statement, but contends that it did in fact instruct Cifuentes to omit the statement from his testimony. The government argues that the statement was fleeting and insignificant in the context of the overall evidence and therefore did not prejudice Riddle.

We cannot accept the government's position that the statement was not prejudicial. Testimony involving a death threat by the defendant would be quite likely to cast the defendant in a bad light and prejudice him in the eyes of the jury, regardless of how fleeting the statement might be. We note, however, that the trial court gave the following instruction to the jury with regard to the death threat testimony:

> THE COURT: During the course of the testimony yesterday when Mr. Cifuentes was on the stand, he testified that the defendant Riddle made a statement to him, the exact nature of which was not perhaps totally clear, but there was a statement that Riddle might or would kill somebody.
>
> Defense counsel made an appropriate objection to that testimony coming from Mr. Cifuentes, and the court apparently overruled that objection. Overruling that objection was inadvertent on the part of the court and clearly erroneous. That objection should have been sustained. It is now sustained.
>
> But, in addition to simply sustaining the objection, it is necessary that I instruct you that you are to totally and completely disregard that statement from Cifuentes and allow it to play no part in your consideration of the guilt or innocence of the defendant Riddle of the charges that have been made against him.
>
> Because of the nature of that statement and the likelihood that it could prejudice your thinking about Mr. Riddle, I'm going to ask you to respond to my inquiry as to whether you believe that you can fully and completely hear and determine the charges against Mr. Riddle without consideration of that statement by Mr. Cifuentes and without allowing that to influence your judgment in any way.
>
> Is there any one of you that cannot do that?
>
> All right. You will indicate then that you can. Thank you.

We hold that this instruction cured any prejudice that Riddle might have suffered initially from the death threat testimony.

Appellant Riddle also contends that the government acted in bad faith by presenting evidence concerning the 50-kilogram transaction to the grand jury that indicted Riddle. As mentioned earlier, there is no dispute that Riddle was not involved in this transaction. Riddle argues that the government affirmatively misled the grand jury into believing that the 50-kilogram transaction was part of the conspiracy with which Riddle was charged, thus creating a biased grand jury and depriving Riddle of due process.

■■■■ A denial of due process occurs where the grand jury has been overreached or deceived in some significant way, as where perjured testimony has knowingly been presented. *United States v. Thompson*, 576 F.2d 784 (9th Cir. 1978). There is no evidence that the grand jury in this case was overreached or deceived in any way. Thus, we reject this contention.

■■■■ Appellants also contend that the trial court erred by limiting their cross-examination of Agent Driver with respect to the 50-kilogram transaction. The government's direct examination of Agent Driver elicited testimony regarding both the 50-kilogram deal and the 200-gram deal. Following this testimony, the court instructed the jury to disregard all testimony concerning the 50-kilogram deal as far as Barnes and Riddle was concerned because the government conceded that neither Barnes nor Riddle were involved in that transaction. The court then invited counsel for Riddle to cross-examine Agent Driver regarding

whether Barnes or Riddle had any involvement with the 50-kilogram transaction. Riddle's counsel declined this invitation. The following exchange occurred between the court and Riddle's counsel:

THE COURT: I think it would be appropriate, Mr. Skinner, for you to ask this witness whether or not the sample or any transactions or discussions about it had anything to do with any of these defendants, with either Mr. Vasquez, Mr. Riddle, or Mr. Barnes. Obviously, the witness' answer must be in the negative that it did not.

MR. SKINNER: And that is the only question the court will allow with respect to that; is that correct?

THE COURT: If you have other questions, Mr. Skinner, that you think will make it clear or clearer that that deal was not a part of the charges against these defendants I'm not going to restrict you in that fashion.

I think, however, that continued inquiry into that transaction without making it clear that it did not involve these defendants is simply going to put back into the minds of the jury that it did involve these defendants. And we're trying to take it out.

Appellants argue that the court, by "limiting" cross-examination of Agent Driver, denied appellants' sixth amendment confrontation rights. Appellants do not claim to have been prejudiced by this "limitation," and indeed it appears from the court's statements that its ruling was designed to prevent prejudice to the appellants. Appellants urge, however, that denial of cross-examination is an error of constitutional dimension and no prejudice need be shown, citing *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968), and *Brookhart v. Janis*, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966).

Appellants' reliance on both *Smith* and *Brookhart* is misplaced. *Brookhart* involved a complete denial of all cross-examination of prosecution witnesses. In this case, however, the trial court did not restrict appellants from questioning Agent Driver for the purpose of making it clear to the jury that the 50-kilogram transaction was not a part of the charges against appellants. Furthermore, appellants' cross-examination of Agent Driver with regard to all matters other than the 50-kilogram transaction was not restricted by the trial court in any way. *Smith v. Illinois*, on the other hand, involved a denial of "the right to ask the principal prosecution witness either his name or where he lived, although the witness admitted that the name he had first given was false." 390 U.S. at 131, 88 S.Ct. at 750. As the Supreme Court noted,

when the credibility of a witness is in issue, the very starting point in "exposing falsehood and bringing out the truth" through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself.

*Id.* (footnote omitted). In this case, we are not faced with a situation similar to that in *Smith*. The trial court's ruling did not constitute a restriction on "rudimentary inquiry," but rather was merely a determination that, because the evidence showed no involvement by either appellant in the 50-kilogram transaction, further cross-examination in that area was not material to an issue before the jury. Thus, we reject appellants' contention that the trial court's ruling infringed on their sixth amendment confrontation rights.

Appellants' final contention is that the trial court erroneously removed the multiple conspiracy question from the jury's consideration by instructing the jury to disregard all testimony concerning the 50-kilogram transaction. As the government points out, however, the trial court permitted the jury to consider evidence regarding the 50-kilogram transaction for the limited purpose of determining whether the indictment charged separate conspiracies. The court gave the following instruction to the jury on multiple conspiracies:

Although Counts 1 and 2 of the indictment each charge a single conspiracy, it would be possible to find separate conspiracies, one relating to the so-called 50-kilogram deal and the sample of cocaine which Ivan Cifuentes and Agent Douglas Driver were seeking prior to their attempted purchase of the 50 kilograms of cocaine and the other relating to the approximately 227 grams of cocaine which was to be delivered by Mrs. Lillian Ortiz-Ramirez.

Whether there was one conspiracy or two conspiracies or no conspiracy at all is a factor for you to determine in accordance with these instructions.

You are further instructed with regard to the alleged conspiracy offenses that proof of several separate conspiracies is not proof of the single overall conspiracy charged in Counts 1 and 2 of the indictment unless one of the several conspiracies which is proved is the single conspiracy which the indictment charges.

What you must do is determine whether the single conspiracy charged in Counts 1 and 2 of the indictment existed between two or more conspirators. If you find that no such conspiracy existed, then you must acquit the defendants as to that charge.

However, if you are satisfied that such a conspiracy existed, you must determine who were the members of that conspiracy. And if you find that a particular defendant is a member of another conspiracy, not the one charged in Counts 1 and 2 of the indictment, then you must acquit that defendant.

In other words, to find a defendant guilty you must find that he was a member of the conspiracy charged in the indictment and not some other separate conspiracy.

This instruction clearly demonstrates that the trial court did not remove the multiple conspiracy question from the jury's consideration, and thus we reject appellants' final contention as well.

For the reasons expressed in this opinion, the appellants' convictions on all counts are affirmed.

AFFIRMED.