[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14238
Non-Argument Calendar
_____

D.C. Docket No. 8:11-cr-00366-JSM-TBM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROGER LEE SHOSS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 24, 2013)

Before MARCUS, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Roger Shoss appeals his conviction for conspiracy to commit wire fraud

under 18 U.S.C. § 371 arguing (1) that venue was improper in the Middle District

of Florida, where the trial was held, and (2) that the indictment failed to charge an offense constituting a crime.

## I.  Background

Shoss was charged and convicted of conspiring with co-defendant Nicolette Loisel and others to steal and misappropriate the identities, histories and shareholder bases of publicly traded, dormant companies so that shares of stock in companies with no underlying business and mere puppet presidents could be sold. The conspirators used online applications, faxes, wires and e-mail to carry out their scheme.

Typically, the scheme started by identifying a company that was no longer in good standing in its state of incorporation, say Delaware, often for failing to pay taxes, but that still had an active Committee on the Uniform Securities Identification Procedure (CUSIP) number and ticker symbol on the NASDAQ stock exchange.  Then, one of the conspirators would request to incorporate a new company with the same name in the same state.  The new company would then change its name.  The conspirators would then apply online for a new CUSIP number and to suspend the old CUSIP number based on the name change, explaining that the company had been publicly traded on the NASDAQ exchange under the old name.  Armed with the new CUSIP number, documentation that showed amendments to the articles of incorporation authorizing a new stock split,

2

and other fraudulent verification documentation,[1] the conspirators would approach the NASDAQ requesting to change the company's ticker symbol. After obtaining a new ticker symbol, the conspirators would print stock certificates using the new CUSIP number but also information about the old company. Finally, through others, shares in these shell companies would be sold to unknowing British investors, with the sale proceeds being deposited in an escrow account in Pinellas County, Florida. Money from that escrow account in Florida would then be wired back to Shoss in Texas.

## II. Venue

On appeal, Shoss argues that the district court erred in denying his motion to dismiss the indictment for improper venue in the Middle District of Florida and, in the alternative, to transfer the proceeding to the Southern District of Texas. He contends that the conspiracy for which he was charged involved twenty overt acts, none of which occurred in the Middle District of Florida, and that the conspiracy had terminated prior to the acts taking place in Florida. Shoss also argues that the Southern District of Texas was an appropriate forum because all of the overt acts involved wires to or from Houston, where Shoss resided and could obtain optimal medical care for what he characterizes as a neurological condition.

---

[1] In some cases, Shoss would sign all of the incorporation documents, but at least with respect to one of the shell companies, the conspirators enlisted Preston Valentine in Florida to serve as the nominal president and sign an array of verification documents.

3

We review de novo a district court's denial of a motion to dismiss an indictment for improper venue. United States v. Muench, 153 F.3d 1298, 1300 (11th Cir. 1998).

"[V]enue is an essential element of the government's proof at trial." United States v. Snipes, 611 F.3d 855, 865 (11th Cir. 2010). The Sixth Amendment requires that criminal trials be held before "an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. The locality of the crime is "determined from the nature of the crime alleged and the location of the act or acts constituting it." United States v. Cabrales, 524 U.S. 1, 6–7, 118 S. Ct. 1772, 1776 (1998) (quotation marks omitted). "In a conspiracy case, venue is proper in any district where an overt act was committed in furtherance of the conspiracy." United States v. Smith, 918 F.2d 1551, 1557 (11th Cir. 1990). "[The] overt act may be committed by any conspirator, anyone who aids or abets a conspirator, or anyone a conspirator causes to act." United States v. Bradley, 644 F.3d 1213, 1255 n.87 (11th Cir. 2011). In order to sufficiently prove venue, the government need only show, by a preponderance of the evidence, that an overt act was committed in the district of prosecution. United States v. Barnes, 681 F.2d 717, 722 (11th Cir. 1982). "In determining whether the prosecution met this burden, the evidence and all reasonable inferences derived therefrom must be viewed in the light most favorable to the government." Id. Finally, the overt act in

4

the location of the venue need not be alleged in the indictment, so long as evidence of the act is presented at trial and the defendant is given constitutionally sufficient notice of the charges against him. United States v. Schlei, 122 F.3d 944, 975 n.10 (11th Cir. 1997).

Venue was proper in the Middle District of Florida because co-conspirators Loisel and Shoss committed and/or caused others to commit overt acts in the Middle District of Florida in furtherance of their conspiracy. See Smith, 918 F.2d at 1557. Specifically, by e-mail Loisel directed Valentine, who was working in the Middle District of Florida, to take various actions as "president" of one of the empty-shell companies to create the façade crucial to the conspiracy. See id.; see also United States v. Strickland, 493 F.2d 182, 187 (5th Cir. 1974) (holding that venue was proper both in the district in which a phone call, the overt act, originated and the district where it was received).[2] Further, Shoss caused money-wire transfers to be made from the escrow account in Pinellas County, Florida to Shoss's Texas account. See Bradley, 644 F.3d at 1255 n.87. These overt acts, outlined in the indictment as having occurred "in the Middle District of Florida and elsewhere" and presented at trial, were more than sufficient to establish venue in the Middle District of Florida. See Smith, 918 F.2d at 1557. Thus, there was no

---

[2] In Bonner v. City of Prichard, we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

5

error in failing to dismiss the case for improper venue. See Schlei, 122 F.3d at 975 n.10; Barnes, 681 F.2d at 722.

We review a district court's decision regarding change of venue for abuse of discretion. United States v. Langford, 647 F.3d 1309, 1319 (11th Cir. 2011), cert. denied, Langford v. United States, ___ U.S. ___, 132 S. Ct. 1121 (2012). Federal Rule of Criminal Procedure 21(b) permits a district court to transfer venue to any appropriate jurisdiction "for the convenience of the parties, any victim, and the witnesses, and in the interests of justice." Fed. R. Crim. P. 21(b). "A criminal defendant does not have a constitutional right to be tried in the district encompassing his residence." United States v. Kopituk, 690 F.2d 1289, 1322 (11th Cir. 1982). "A transfer of venue is completely within the discretion of the trial court . . . ." Smith, 918 F.2d at 1556.

Shoss's motion for change of venue does not justify transfer, as his concern about the cost of his "daily subsistence" while being tried in a district other than his own was of little relevance to the choice of venue. See Kopituk, 690 F.2d at 1322–23. Shoss's explanation of his neurological condition was short and vague, without an affidavit from a doctor giving a specific diagnosis. In any event, other factors weighed in favor of the Florida location, such as witnesses living in the Middle District of Florida. Indeed, no potential witnesses, other than Shoss and Loisel, resided in the Southern District of Texas.

We therefore affirm the district court's denial of Shoss's motion to dismiss for improper venue, and, in the alternative, for a transfer of venue.

### III. Failure to State an Offense

Shoss also argues that the district court erred in denying his motion to dismiss the indictment because it did not state an offense. Shoss argues that the ticker symbols and CUSIP numbers Shoss fraudulently acquired were comparable to licenses and, thus, did not qualify as money or property under United States v. Cleveland, 531 U.S. 12, 121 S. Ct. 365 (2000). Based on this, Shoss argues that he did not commit the crime for which he was indicted.

We review de novo the sufficiency of an indictment. United States v. Bobo, 344 F.3d 1076, 1083 (11th Cir. 2003). We have explained that

> [a]n indictment is sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.

United States v. Steele, 147 F.3d 1316, 1320 (11th Cir. 1998) (quotation marks omitted).

To prove conspiracy to commit fraud in violation of 18 U.S.C. § 371, the government must demonstrate: "(1) agreement between two or more persons to achieve and unlawful objective; (2) knowing and voluntary participation in that agreement by the defendant; and (3) an overt act in furtherance of the agreement."

7

United States v. Broughton, 689 F.3d 1260, 1277 (11th Cir. 2012).  Proof of wire fraud, in violation of § 1343, requires evidence that a person "(1) intentionally participat[ed] in a scheme or artifice to defraud another of money or property, and (2) use[d] or caus[ed] the use of . . . wires for the purpose of executing the scheme or artifice."  Bradley, 644 F.3d at 1238 (quotation marks omitted).

The Supreme Court has held that the wire fraud statutes protect only property rights.  McNally v. United States, 483 U.S. 350, 358–59, 107 S. Ct. 2875, 2880–81 (1987), superseded by 18 U.S.C. § 1346 (1988).[3]  Cleveland, upon which Shoss relies, held that municipal-granted licenses do not qualify as property rights because, when fraudulently obtained, the licenses are property-like in the recipient's hands only, not in the victim's.  531 U.S. at 15, 121 S. Ct. at 368.  Because a state's core concern in issuing licenses is regulatory, the licensing scheme constitutes an exercise of the state's police powers, rather than a conveyance of property.  Id. at 20–21, 121 S. Ct. at 371–72.

On the record before us, we conclude that Shoss's indictment alleging conspiracy to commit wire fraud sufficiently presented the essential elements of a violation of 18 U.S.C. § 371.  See Steele, 147 F.3d at 1320.  The CUSIP numbers and ticker symbols constituted valuable intangible property under 18 U.S.C.

---

[3] The Supreme Court later held that Congress's enactment of § 1346 allowed a more expansive interpretation of the rights protected by including the intangible right to honest services.  Skilling v. United States, 561 U.S. ___, ___, 130 S. Ct. 2896, 2927 (2010).

§ 1343. These corporate identities had discernible monetary value because they simulated companies that were publicly-traded, a status valued for generating investor confidence, and which must usually be obtained through a cumbersome and expensive process. Beyond that, the monetary value of the corporate identities was demonstrated both by Shoss's insistence that the new corporations appear to be publicly-traded and the market demand for shares in the companies that appeared to be traded on NASDAQ. Thus, the unique, identifying information was not like a government-issued license, but, instead, had value in the hands of both the recipient (Shoss) and the victim companies. See Cleveland, 531 U.S. at 15, 121 S. Ct. at 368. Because the identifying information constituted property, the indictment was sufficient to state an offense under § 371. See Bobo, 344 F.3d at 1083; Bradley, 644 F.3d at 1238; Broughton, 689 F.3d at 1277.

Upon consideration of the record and the parties' briefs, we affirm.

**AFFIRMED.**

9