[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11367
Non-Argument Calendar

_____

D.C. Docket No. 6:16-cr-00207-ACC-TBS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSHUA OTIS GORDON CARTER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 26, 2019)

Before WILLIAM PRYOR, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Joshua Carter appeals his convictions for possession with intent to distribute

cocaine and possession of a firearm by a convicted felon. Carter argues that there

was insufficient evidence that he constructively possessed the cocaine and the firearm, which were found in the closet of his master bedroom. He also argues that his trial counsel provided ineffective assistance when he made an inadequate motion for judgment of acquittal and failed to request special jury instructions about possession. Although we decline to review on direct appeal the performance of counsel with respect to the jury instructions because Carter did not raise the issue in the district court, we affirm Carter's convictions in all other respects.

**I**

The Altamonte Springs (Florida) Police Department executed a search warrant at Carter's house the evening of February 29, 2016. Carter had recently moved into the home, which he shared with his girlfriend and their children. He gave the address to his probation officer when he moved out of the small apartment he had shared with his girlfriend and her father. The probation officer had visited Carter at the new home five days before the search.

No one was home during the search. Police began searching in the master bedroom upstairs, where they found scattered cash and a currency counter. In the master bedroom closet, which contained 75% men's clothes, 25% women's clothes, and 20 to 30 pairs of men's shoes, police found a Glock .40-caliber handgun with an extended magazine. They also found a red Iron Age–brand shoebox containing a kilogram of cocaine, baggies, cups, spoons with cocaine

residue and burn marks, lidocaine, nail polish remover,[1] a GPS device, two credit cards in the name of Carter's girlfriend's father, a receipt in the father's name for a different firearm, and an empty box for a digital scale. An orange Nike shoebox contained $12,000 in cash, baggies, the digital scale, a wallet, and a health insurance card in Carter's name. Another shoebox contained a wallet, a driver's license with Carter's photo, and credit cards in the name of Carter's mother and girlfriend. The closet also contained paper bags filled with photographs of Carter and his family, love letters between Carter and his girlfriend, greeting cards, and prison commissary receipts in Carter's name.

During the search, Carter's probation officer called Carter four times to inquire why he was not at home. The first time, he said he was at work. The second time, he asked why the police were in front of his development. The third and fourth times, Carter did not answer. Carter never came home the night of February 29.

## II

A federal grand jury indicted Carter on one count of possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1),

---

[1] A police officer testified at trial that acetone nail polish remover is used in drug trafficking for diluting pure cocaine by bonding it with other substances, such as lidocaine, before resale.

3

(b)(1)(B),[2] and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2).[3] During the two-day jury trial in October 2017, a police officer testified about executing the search of Carter's home, and police analysts testified about the fingerprint evidence recovered from the seized items. Five of Carter's fingerprints had been identified on the gun receipt from the Iron Age shoebox. The probation officer testified about Carter's move and her conversations with him the night of the search.

Carter's girlfriend's father testified as follows. Carter lived with him briefly in February or March 2016 after Carter got out of prison, and then Carter and his girlfriend moved into a house together. The girlfriend's father had never been to the new house. He was in the habit of storing his belongings in shoeboxes, but he never kept drugs or large amounts of cash in them. The Iron Age shoebox (but not its contents) was his, and Carter probably took it when he moved out of his

---

[2] "[I]t shall be unlawful for any person knowingly or intentionally— (1) to . . . possess with intent to . . . distribute . . . a controlled substance." 21 U.S.C. § 841(a) (2010) (amended Dec. 21, 2018). Violations involving "500 grams or more of a mixture or substance containing a detectable amount of . . . cocaine" were subject to a term of imprisonment "not less than 5 years and not more than 40 years," but if the offender had a prior conviction for a "felony drug offense," the mandatory minimum sentence was 10 years. *Id.* § 841(b)(1)(B)(ii).

As since amended, § 841(b)(1)(B) now applies the 10-year mandatory minimum when an offender has a prior conviction for a "serious drug felony or serious violent felony." First Step Act of 2018, Pub. L. No. 115-391, § 401(a)(2)(B), 132 Stat. 5194, 5220 (Dec. 21, 2018). That amendment is not retroactive. *Id.* § 401(c), 132 Stat. at 5221.

[3] "It shall be unlawful for any person— (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g). Violations of § 922(g) are subject to a fine, a term of imprisonment "not more than 10 years," or both. *Id.* § 924(a)(2).

apartment. The Nike shoebox (but not its contents) may or may not have been his because he and Carter wore the same size shoe, and Carter bought a lot of Nike shoes. Carter's girlfriend's father also testified that he lawfully owned three firearms but not the Glock seized from Carter's house.

At the close of the government's evidence, Carter's counsel moved for a judgment of acquittal, asking the district court, "Would you like my Rule 29 motion?":[4]

> It's been a day and a couple of hours. I believe my Judge has been on the bench some time. So I leave it to the Court to evaluate this evidence and come to the conclusion that there's not enough evidence sufficient to send the case to a jury.

The court denied the motion, reasoning, "I think there's enough to go to the jury." The jury deliberated for nearly three hours before returning verdicts of guilty on both counts. In March 2018, the court sentenced Carter to 120 months' imprisonment, the mandatory minimum sentence for offenders, like Carter, with a prior conviction for a "felony drug offense." *See* 18 U.S.C. § 841(b)(1)(B) (2010) (amended Dec. 21, 2018). Carter now appeals his convictions.[5]

---

[4] "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).

[5] On appeal, Carter does not raise any issues about his sentence.

## III

Carter argues that his motion for a judgment of acquittal should have been granted, because the evidence was legally insufficient to allow the jury to convict him of possession of the firearm and the cocaine. But earlier in his briefing, Carter asserts that his counsel "failed to actually make a motion for judgment of acquittal" or that the motion he made was "legally insufficient" because it argued only briefly that "there's not enough evidence sufficient to send the case to a jury." If we took Carter at his word that this issue was not properly raised in the district court, we would review this issue not *de novo*, but rather only to determine whether a reversal of his convictions is "necessary to prevent a manifest miscarriage of justice." *United States v. Greer*, 440 F.3d 1267, 1271 (11th Cir. 2006).

But "it does not matter" whether we view his counsel's Rule 29 motion as sufficient to raise the issue before the district court. *Id.* Even assuming that his counsel's motion was legally sufficient, "the result of this appeal would be the same." *Id.* After viewing the evidence and making all reasonable inferences in favor of the verdict, *id.*, we conclude that any motion for a judgment of acquittal was due to be denied.

We will uphold the district court's denial of a motion for judgment of acquittal "if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt." *United States v. Rodriguez*, 218

F.3d 1243, 1244 (11th Cir. 2000). Of course, "[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Tinoco*, 304 F.3d 1088, 1122 (11th Cir. 2002) (quoting *United States v. Calderon*, 127 F.3d 1314, 1324 (11th Cir. 1997)). "The test for sufficiency of the evidence is identical regardless of whether the evidence is direct or circumstantial, and no distinction is to be made between the weight given to either direct or circumstantial evidence." *United States v. Mieres-Borges*, 919 F.2d 652, 656–67 (11th Cir. 1990) (internal quotation marks omitted). However, where the government relies on circumstantial evidence, "reasonable inferences, not mere speculation," must support the jury's verdict. *United States v. Mendez*, 528 F.3d 811, 814 (11th Cir. 2008).

To sustain a conviction for possession of a firearm by a convicted felon, the government must prove (1) that the defendant was a convicted felon; (2) that the defendant was in knowing possession of a firearm; and (3) that the firearm was in or affected interstate commerce. *United States v. Wright*, 392 F.3d 1269, 1273 (11th Cir. 2004). To sustain a conviction for possession with intent to distribute a controlled substance, the government must prove that the defendant had (1) knowledge, (2) possession, and (3) intent to distribute. *United States v. Flanders*, 752 F.3d 1317, 1332 (11th Cir. 2014). "Possession may be either actual or constructive; if the accused exercised some measure of dominion or control over

the contraband, either exclusively or in association with others, he constructively possessed it." *Tinoco*, 304 F.3d at 1123 (quoting *United States v. Battle*, 892 F.2d 992, 999 (11th Cir. 1990)). "Constructive possession, whether exclusive or joint, exists when a defendant has ownership, dominion, or control over an object *or the premises where the object is found*." *Flanders*, 752 F.3d at 1332 (emphasis added).

Carter argues that "the jury guessed" that the firearm and the drugs were in his possession. Viewing the evidence in the light most favorable to the jury's verdicts, we disagree. Carter concedes on appeal that he lived in the house where the items were seized. His girlfriend's father and his probation officer also testified that Carter resided in the house, and we must assume the jury believed that testimony. Thus, the jury was entitled to conclude that, because Carter had dominion and control over the premises where the firearm and the cocaine were found, he constructively possessed them. *See id.*

Nonetheless, Carter argues that his girlfriend also lived in the house and that his girlfriend's father stored items there. Yet Carter acknowledges that the father testified that the firearm and the cocaine did not belong to him, and, viewing the evidence in the light most favorable to the verdicts, we must assume that the jury credited that testimony. Thus, Carter's remaining contention is that the government did not prove that the firearm and the cocaine did not belong to his girlfriend. This argument fails because, as we have noted, Carter had dominion and control over

the premises, which is sufficient to establish constructive possession of the items. Furthermore, even if Carter's girlfriend jointly possessed the items with him, joint possession is sufficient to sustain a conviction, because "constructive possession of a controlled substance may be exclusive or joint." *United States v. Tamargo*, 672 F.2d 887, 890 (11th Cir. 1982). In sum, because the firearm and cocaine were found in the closet attached to Carter's bedroom, and in close proximity to Carter's belongings, a reasonable jury could have found that Carter "exerted 'ownership, dominion, or control'" over them. *See United States v. Molina*, 443 F.3d 824, 830 (11th Cir. 2006).

## IV

Carter also argues that his counsel was ineffective for not making a legally sufficient motion for a judgment of acquittal, and for not requesting special jury instructions about possession. Neither of these ineffective-assistance issues was raised in the district court, which therefore had no opportunity to develop a factual record about them. Generally, we do not consider on direct appeal claims of ineffective assistance of counsel that were not raised in the district court. *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010). We will, however, consider such claims on direct appeal "if the record is sufficiently developed." *Id.* (quoting *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002)).

Because Carter did not raise either of these issues in the district court, the record as to his counsel's performance is entirely undeveloped. We do not know whether, as a factual matter, his handling of the jury instructions was "sound trial strategy." *See Strickland v. Washington*, 466 U.S. 668, 689 (1984). Similarly, we have not been asked to make any legal determinations on direct appeal about the jury instructions, and the district court made no legal conclusions about jury instructions that were not requested. Accordingly, we will not consider his ineffective-assistance-of-counsel claim as to jury instructions.

With respect to his ineffective-assistance claim as to the motion for a judgment of acquittal, however, the record is sufficiently developed for us to decide the issue. A claim of ineffective assistance relating to a motion for a judgment of acquittal is "one of those rare instances" where the record is sufficiently developed on direct appeal for our adjudication. *Greer*, 440 F.3d at 1272. Having just decided on direct appeal that any motion for a judgment of acquittal was properly denied, we also conclude that Carter suffered no prejudice from any deficient performance with respect to that motion. *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("the court need not address the performance prong if the defendant cannot meet the prejudice prong"). Because the motion for a judgment of acquittal was due to be denied in any case, Carter cannot establish "a reasonable probability that but for counsel's deficient performance, the result of his

trial would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694). His ineffective-assistance claim on this issue therefore fails.

## V

Carter's convictions are **AFFIRMED.**