[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13370
Non-Argument Calendar
_____

D.C. Docket No. 8:13-cr-00416-JSM-TBM-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SANTANA JAMES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 3, 2015)

Before ED CARNES, Chief Judge, JORDAN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Santana James challenges her convictions for conspiracy to possess cocaine

with intent to distribute, see 21 U.S.C. §§ 841 and 846; and possession of cocaine

with intent to distribute, see 18 U.S.C. § 2; 21 U.S.C. § 841(a)(1).  She contends that the government failed to establish that the Middle District of Florida was a proper venue, that the evidence at trial was insufficient to sustain her convictions, and that the jury's verdict went against the great weight of the evidence.

## I.

On August 27, 2013, a federal grand jury issued an indictment charging James and four codefendants with (1) conspiring to possess cocaine with intent to distribute, and (2) knowingly and intentionally possessing cocaine with intent to distribute.  James stood trial alone on March 31 and April 1, 2014.  The evidence at trial established the following:

In May 2013, federal investigators learned that Antonio Richards and Horace Troupe were involved in narcotics distribution in Tampa, Florida.  The investigators obtained a wiretap on Richards' phone and learned that Troupe was supplying Richards with cocaine smuggled in from Jamaica.  They also learned that Troupe often relied on Krystel Fox, with whom he had an intimate relationship, to help with his smuggling efforts.

In early August 2013, Troupe called Fox from Jamaica and asked her to pick up a woman from the Fort Lauderdale Airport on August 13.  That woman was Santana James.  Fox picked James up from the airport at the time Troupe had specified and took James to a hotel in Fort Lauderdale.  Fox then went to a

2

pharmacy and bought laxatives, prunes, and milk, as Troupe had directed. When Fox returned to the hotel, she gave the laxatives to James, who immediately took them. James showed Fox the underwear she had worn on her flight, which had cocaine sewn inside it, as well as a plastic cylinder from her luggage that contained cocaine. James explained that Troupe had made her wear those items on the flight and bring them into the United States, that he had provided her a visa and paid for her travel expenses, and that she expected to be paid between $1,500 and $3,000 for bringing the cocaine into the United States. She also told Fox that she had swallowed pellets containing cocaine and needed to throw them up.

Later that day, James showed Fox between six and eight pellets that were an inch long and wrapped in pink plastic wrap. She asked Fox to bring her some cleaning supplies to disinfect the pellets and "get the cocaine out." For the next two days, Fox brought James food while James passed more pellets from her body. Troupe had not yet paid James, so she asked Fox to sell eight of the pellets of cocaine. Fox agreed and took the eight pellets to the home of a man named "Peanut." He weighed the cocaine from the pellets and found that each one contained about five grams of cocaine. He paid Fox $800 for the cocaine.

The same day, Troupe flew from Jamaica into Miami International Airport. The calls Troupe made indicated that he was bringing six kilograms of cocaine with him. Troupe checked in with James at the hotel room where she had been

3

staying and later met Fox at another hotel.  Troupe and Fox made plans to travel to Tampa.  Before they left, Troupe had Fox help him repackage the cocaine, taking it out of the plastic pellets that James and other women[1] had swallowed and then placing it into new packaging for the trip to Tampa.

On August 18, 2013, officers spotted Troupe and Fox's rental car in Pinellas County, Florida.  They followed Troupe and Fox to a hotel in Clearwater.  The two rented a room where Fox stayed while Troupe drove to Richards' home.  After Troupe picked up Richards, the officers stopped the rental car and arrested both men.  They searched the car and found over seven kilograms of cocaine wrapped in green plastic wrap.  A short time later, officers arrested Fox at the hotel.

Fox quickly agreed to cooperate with the investigation and continued texting with James.  She also agreed to make a controlled call to James.  On that call, Fox asked James how much cocaine she had brought with her.  James answered, "Probably half [a] million U.S. or something like that."  Fox then clarified that she wanted to know how many pellets of cocaine James had swallowed.  James replied, "I think it was about 84."  Fox also asked James how Troupe was getting so much cocaine into the United States, and James replied that she had seen two other girls at the hotel who were definitely "muling" for Troupe.

---

[1] Troupe had several women working for him.

4

Three days after the call, officers arrested James at the Fort Lauderdale airport as she was attempting to fly back to Jamaica.  They searched her suitcase and found a box of laxatives with ten pills missing.  When one officer told James that they had recorded her call with Fox, James responded, "It's in God's hands."

After the government rested, James moved for a judgment of acquittal, which the district court denied.  James declined to present her own case.  The jury found her guilty on both counts, and the district court sentenced her to 78 months in prison.  This is James' appeal.

## II.

James challenges her convictions on the grounds that:  (1) the government did not establish that the Middle District of Florida was a proper venue; (2) the evidence was insufficient to support her convictions; and (3) her convictions were against the great weight of evidence at trial.

## A.

We begin with James' contention that the government did not establish venue in the Middle District of Florida.  The Sixth Amendment gives criminal defendants the right to be tried before "an impartial jury of the State and district wherein the crime shall have been committed."  U.S. Const. Amend. VI.  When a crime is committed across multiple districts, the defendant may be tried "in any district" where the "offense was begun, continued, or completed."  18 U.S.C.

§ 1327(a).  We review de novo whether the government established by a preponderance of the evidence that the venue for the trial was proper, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the verdict.  United States v. Stickle, 454 F.3d 1265, 1270 (11th Cir. 2006).

The Middle District of Florida was a proper venue for both counts.  The first count charged James with conspiracy to possess cocaine with intent to distribute.  See 21 U.S.C. §§ 841 and 846.  A conspirator may be tried "in any district where an overt act was committed in furtherance of the conspiracy."  United States v. Smith, 918 F.2d 1551, 1557 (11th Cir. 1990).  The preponderance of the evidence showed that two of the conspirators, Fox and James, drove the cocaine from Fort Lauderdale to Clearwater so they could sell it to Richards.  That was an overt act in furtherance of the conspiracy, and Clearwater is in the Middle District of Florida.  So venue was proper for the first count.  The second count charged James with possession of cocaine, 21 U.S.C. § 841(a)(1), and included a charge that she aided or abetted the possession of cocaine, see 18 U.S.C. § 2.  An aider or abettor can be tried in a district where the principal committed the offense.  United States v. Russo, 796 F.2d 1443, 1459 (11th Cir. 1986).  The preponderance of the evidence showed that James aided and abetted Fox and Troupe, who then possessed the

6

cocaine when they drove it into the Middle District of Florida.  So venue was proper for the second count.

**B.**

James also contends that the evidence at trial was insufficient to support her convictions.  We review de novo the sufficiency of the evidence at trial, viewing the evidence in the light most favorable to the government.  United States v. Browne, 505 F.3d 1229, 1253 (11th Cir. 2007).  If the evidence would allow a reasonable jury to conclude that the defendant was guilty beyond a reasonable doubt, we must affirm.  Id.

To obtain a conviction on the conspiracy count, the government had to show that:  (1) there was an agreement to possess cocaine with intent to distribute; (2) James knew about the agreement; and (3) voluntarily joined it.  United States v. Charles, 313 F.3d 1278, 1284 (11th Cir. 2002).  The government established all three elements through the testimony of Fox and the investigators, transcripts of text messages between Fox and James, and a transcript of the controlled call Fox made to James.  The evidence showed that Troupe was smuggling cocaine in from Jamaica and selling it to distributors in Tampa, that James knew Troupe was smuggling cocaine in quantities well beyond what an individual would use, and that she agreed to smuggle cocaine for him in return for a visa and money.  That was enough to sustain a conviction on the conspiracy count.

James' arguments are not persuasive.  She argues that the government did not show that she knew the substance she was smuggling into the United States was cocaine.  But Fox's testimony demonstrated that James knew the pellets contained cocaine.  She also argues that the government never proved that the substance in the pellets she smuggled actually was cocaine.  But the jury could easily infer that from the testimony that:  (1) Fox was able to take several of the pellets from James' hotel room and sell them for $800; and (2) Fox and Troupe repackaged the powder from James' and other women's pellets and placed it in the rental car, and the government's forensic tests showed that the powder found in the car was cocaine.

To obtain a conviction on the possession with intent to distribute count, the government had to establish:  "(1) knowledge; (2) possession; and (3) intent to distribute."  United States v. Poole, 878 F.2d 1389, 1391 (11th Cir. 1989).  As explained above, Fox's testimony showed that James knew the substance was cocaine.  It also showed that James possessed the cocaine when she smuggled it into the United States and then held it in her hotel room.  Finally, the jury could easily infer an intent to distribute from, among other things, the quantity of cocaine and James' statement that she knew that she was one of multiple women "muling" for Troupe.

8

## C.

Finally, James argues that the verdict was against the great weight of the evidence at trial.  She can succeed only if the evidence at trial weighed so "heavily against the verdict that a serious miscarriage of justice may have occurred." United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985) (quotation marks omitted).  Such challenges are highly disfavored and meant only for "those really exceptional cases." Id. at 1313 (quotation marks omitted).

James' challenge simply rehashes the arguments she raised regarding the sufficiency of the evidence, none of which establish that the jury's verdict was against the weight of the evidence at trial — let alone the great weight.

**AFFIRMED.**